**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| PHILLIP LITCHFIELD,<br><br>    Plaintiff,<br><br>    v.<br><br>HEARTLAND AUTOMOTIVE SERVICES II, INC.,<br><br>    Defendants. | Case No. 14-cv-06228<br>Honorable Charles R. Norgle, Sr. |

**DEFENDANT HEARTLAND AUTOMOTIVE SERVICES II, INC.'S
MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COMPLAINT,
OR, IN THE ALTERNATIVE, COMPEL ARBITRATION AND STAY PROCEEDINGS**

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ........................................................................................................... 1

II. RELEVANT FACTS ...................................................................................................... 2

    A. Plaintiff's Allegations ........................................................................................... 2

    B. Heartland's Customer Survey Program ................................................................ 3

    C. Heartland's Customer Survey Calls To Plaintiff .................................................. 4

    D. The Parties' Agreement To Bilateral Arbitration ................................................. 5

III. ARGUMENT .................................................................................................................. 6

    A. Plaintiff Fails To Allege Facts Sufficient To State A Claim ................................ 6

    B. Plaintiff Expressly Consented To Receive Customer Survey Calls ..................... 7

    C. This Court Should Compel Arbitration And Stay These Proceedings ................ 10

        1. Plaintiff's Arbitration Agreement With Heartland Is Valid ..................... 11

        2. Plaintiff's Claim Falls Within The Scope Of The Arbitration
           Clause ........................................................................................................ 13

IV. CONCLUSION ............................................................................................................. 15

I.  **INTRODUCTION**

This putative class action alleges violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"). Defendant, Heartland Automotive Services II, Inc. ("Heartland"), together with its affiliates, is the nation's largest franchisee of Jiffy Lube Inc. ("Jiffy Lube"), and operates Jiffy Lube brand automotive service centers around the country. In June of 2014, if a customer provided his telephone number to Heartland while purchasing services at a service center, he would receive an automated phone call shortly thereafter asking him to participate in a customer satisfaction survey. These calls contain no marketing, sales or promotional content whatsoever. Plaintiff nevertheless falsely alleges that Heartland violated the TCPA by placing three "marketing" calls to him for the "single purpose of promoting Heartland's services." (Compl. at ¶¶ 12, 13.) Plaintiff is wrong, and his complaint should be dismissed for at least two reasons.

***First***, plaintiff fails to state a claim because he merely asserts conclusions of law and regurgitates language from statutes and regulations *in lieu* of any facts regarding the content of the calls. Because plaintiff's complaint is devoid of ***any*** facts plausibly establishing that the calls at issue contained any marketing, promotional or advertising material, it should be dismissed pursuant to *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

***Second***, plaintiff's claims fail because he expressly consented to receive non-telemarketing calls from Heartland during his service visit. Federal law actually permits businesses to place non-telemarketing survey calls when the recipient has voluntarily given his phone number to the business. *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd 8752, 8769, ¶ 31 (1992) (the "1992 Order"). Plaintiff's service invoice, attached to this pleading, conclusively establishes that he voluntarily gave his telephone number to Heartland when he purchased an oil change.

*Finally*, even if plaintiff could somehow state a claim under the TCPA (and he cannot), this Court should compel plaintiff to arbitrate pursuant to the bilateral arbitration agreement that plaintiff signed, and stay these proceedings pending the outcome of that arbitration.

## II.     RELEVANT FACTS

### A.     Plaintiff's Allegations

Plaintiff alleges that Heartland has violated 47 U.S.C. §227(b)(1)(A) of the TCPA by making "unsolicited and unauthorized advertising calls to cellular phones without consent *via* an automatic dialing system." (Compl. at ¶ 1.) This conclusory allegation finds no factual support in the remainder of his complaint. Instead, plaintiff merely repeats it::

- "On June 11, 2014, Litchfield received two unsolicited marketing calls from Heartland on his cellular telephone . . . . These unsolicited marketing calls had the single purpose of promoting Heartland's services." (*Id*. at ¶ 12).

- "On June 12, 2014, Litchfield received a third unsolicited marketing call from Heartland on his cellular telephone . . . . This unsolicited marketing call had the single purpose of promoting Heartland's services." (*Id*. at ¶ 13).

- "Heartland made numerous similar unsolicited marketing calls to many other persons, and, therefore, should be liable for statutory damages under the TCPA. Heartland should also be enjoined from committing similar violations in the future." (*Id*. at ¶ 16).

Plaintiff seeks an injunction preventing any further calls, the recovery of statutory damages of $500 per violation, and costs. (*Id.* at p. 7.)

### B. Heartland's Customer Survey Program

Heartland is a nationwide automotive service company with operations in 26 states. (Walker Declaration at ¶ 3, attached hereto as Exhibit A.)[1] In June of 2014, Heartland was conducting telephonic customer satisfaction surveys. (*Id*. at ¶ 8.) Heartland, through a third-party company, collected and recorded information regarding customers' service experiences by calling customers who had provided their phone number to Heartland in connection with a recent service visit (*Id*. at ¶ 10.) The phone numbers Heartland called were provided by its customers, and were not randomly or sequentially generated by a machine. (*Id* at ¶ 12.)

The survey calls were automated, and first asked if the customer was willing to participate in the survey. (*Id*. at ¶ 13.) The customer was given the opportunity to participate in the survey by pressing "1" on his or her telephone keypad, or to decline the survey opportunity by pressing "2." (*Id*. at ¶ 14.) If a customer declined the survey by pressing "2" on his or her keypad, the automated system played a pre-recorded message thanking him or her for his or her time and the call was automatically terminated. (*Id*. at ¶ 15.) If the customer chose to participate in the survey by pressing "1" on his or her keypad, a pre-recorded prompt asked a series of questions regarding the customer's experience and the perceived quality of the services rendered. (*Id*. at ¶ 16, 18.) Examples of the questions asked include:

- "Please rate your Overall Satisfaction with this visit to Jiffy Lube?"
- "Please rate the Speed of Service with this visit to Jiffy Lube?"

---

[1] While a district court generally may not consider material beyond the pleadings in ruling on a Rule 12(b)(6) motion, courts may consider evidence attached to a motion to dismiss without converting the motion to a summary judgment motion if it is material to the claim but has been omitted from the complaint. *See e.g., 188 LLC Wright v. Assoc. Ins. Cos. Inc.*, 29 F.3d 730, 735 (7th Cir. 1994); *see also McCabe v. Crawford & Co.*, 2002 U.S. Dist. LEXIS 17997 (N.D. Ill. 2002) (granting motion to dismiss after considering a truck rental agreement, which plaintiff failed to attach to the complaint, when it was implicitly and explicitly referred to in the complaint); *Landsman & Funk, P.C. v. Lorman Bus. Ctr., Inc.*, 2009 U.S. Dist. LEXIS 18114 (W.D. Wis. Mar. 9, 2009) (granting motion to dismiss where plaintiff failed to attach the seminar enrollment form which directly refuted plaintiff's allegations).

- "Rate the Friendliness and Courteousness of the staff."
- "Please rate the Cleanliness of our facility."

(*Id*. at ¶ Ex. 1.) The survey calls contained no marketing, advertising or promotional content. (*Id*. at ¶ 20.) Moreover, Heartland provided no incentives, such as coupons or rebates, to customers to participate in the survey; nor did it offer or promote additional services during the call. (*Id*. at ¶ 19.) A complete transcript of the content of the automated survey is attached as Exhibit 1 to the Walker Declaration.

### C. Heartland's Customer Survey Calls To Plaintiff

On June 10, 2014, plaintiff visited a Jiffy Lube location to purchase an oil change for his vehicle. (Walker Declaration at ¶ 22.) Plaintiff provided his phone number to Heartland as part of the process followed by Heartland when completing an invoice. (*Id*. at ¶ 23.) Plaintiff's phone number was then entered into Heartland's point of sale computer program that is used to generate invoices, and the phone number appeared in print at the top of the invoice. (*Id*. at ¶ 24.) On June 11, 2014, Heartland placed two customer satisfaction survey calls to the phone number plaintiff provided at the service station. (Compl. at ¶12; Walker Declaration at ¶ 29.) The calls were made approximately six hours apart. (Walker Declaration at ¶ 30.) Plaintiff did not answer either call. (*Id*. at ¶ 31.)

The following morning, a final customer satisfaction survey call was made to plaintiff. (*Id*. at ¶ 32; Compl. at 13.) When the call was answered, the following pre-recorded message was played:

> Hi, this is Jiffy Lube calling to ensure that your recent service with us was completed to your satisfaction. We would appreciate your feedback on a few brief questions, which should only take approximately 2 to 3 minutes to complete. Press 1 to continue, press 2 to disconnect.

4

(Walker Declaration at ¶ 33.) The recipient chose to continue the call, and was asked "Is this your first visit to a Jiffy Lube?" (*Id*. at ¶ 34, 35.) The recipient then terminated the call. (*Id*. at ¶ 36.) The call lasted 19.2 seconds. (*Id*. at ¶ 37.) Plaintiff does not allege that any additional survey calls were made after June 12, 2014, and none were placed by Heartland. (*Id*. at ¶ 38.)

### D. The Parties' Agreement To Bilateral Arbitration

In connection with his service on June 10, 2014, plaintiff signed and returned to Heartland an invoice verifying his purchase and extending an express warranty. (*Id*. at ¶ 25, 27.) Plaintiff's invoice, attached to the Walker Declaration as Exhibit 2, states directly above plaintiff's signature that the "[g]uest agrees to the Terms & Conditions on the back of this invoice." (*Id*. at Ex. 2.) These agreed Terms & Conditions include a bilateral arbitration agreement and class action waiver, both of which appeared in bold and/or capital letters in the same size font as the rest of the provisions and covered "**any and all disputes or claims arising out of or relating to this contract and/or services . . . or any communication**" by Heartland or Jiffy Lube. (*Id*. (emphasis in original).) Plaintiff also agreed

> **. . . . NOT TO FILE OR PURSUE, AND WAIVE ANY RIGHT TO FILE OR PURSUE, ANY DISPUTE AS A CLASS REPRESENTATIVE OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING. HEARTLAND, JIFFY LUBE®, AND YOU ALSO WAIVE ANY RIGHT TO A JURY TRIAL.**

(*Id*. (emphasis in original).)

Plaintiff was further notified that he had thirty days to unilaterally reject the arbitration agreement and class action waiver, either by sending a written notice by certified mail to Heartland or an email to a specified address. (*Id*.) The opt-out provision specifically states that:

> **YOU MAY OPT OUT OF THE PRECEDING THREE PARAGRAPHS BY SENDING A REJECTION NOTICE…**

(*Id*. (emphasis in original).)  Plaintiff has not alleged that he opted out of this contractual provision.

### III. ARGUMENT

#### A. Plaintiff Fails To Allege Facts Sufficient To State A Claim

To survive a motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  Factual allegations "must be enough to raise a right to relief above the speculative level." *Id.* at 555; *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).  Moreover, courts are not bound to "***accept as true a legal conclusion couched as a factual allegation***." *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 465 (7th Cir. 2010) (emphasis added) (quoting *Twombly*, 550 U.S. at 555); *see also Briscoe v. LaHue*, 663 F.2d 713, 723 (7th Cir. 1981) ("Conclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss").

"To protect consumers from unwanted calls, the TCPA imposes restrictions on the use of the telephone network for unsolicited *advertising* by telephone and facsimile." *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 27 FCC Rcd 1830, 1832 (2012) ("the 2012 Order") (emphasis added).  Accordingly, to state a claim plaintiff must allege *facts* placing Heartland and Heartland's survey calls within the Federal Communications Commission's ("FCC") definition of "advertisement", "telemarketer", "telemarketing", "telephone solicitation", or "unsolicited advertisement". *See* 47 C.F.R. § 64.1200(f)(1), (11), (12), (14) and (15) (each expressly defining these legal terms).  But there is ***not a single fact*** alleged regarding the content of the calls he received or their purpose.  Instead, plaintiff merely recites legal conclusions and statutory language.

For example, plaintiff merely concludes that "Heartland's marketing efforts" violate the TCPA by "making unsolicited and unauthorized advertising calls…" and that the "unsolicited

6

marketing call had the single purpose of promoting Heartland's services." (Compl. at ¶¶ 1, 12-13.) Similarly, plaintiff, incorrectly (and again without factual support), asserts that Heartland made calls in violation of the TCPA by "using a system which either makes calls to cellular telephone numbers from a list of stored numbers or makes calls by randomly or sequentially generating the number to which a call will be made." (Compl. at ¶ 12.) No matter how plaintiff seeks to spin his barebones allegations, they are nothing more than legal conclusions that do not state a claim. *See Brooks v. Ross,* 578 F.3d 574 (7th Cir. 2009) (holding that plaintiff failed to ground his legal conclusions in a sufficiently plausible factual basis when the complaint consisted merely of a formulaic recitation of the cause of action).

Courts routinely dismiss complaints containing such conclusory allegations that simply restate the statutory elements of the TCPA (or similar statutes). *See e.g., Johansen v. Vivant, Inc.*, 2012 U.S. Dist. LEXIS 178558 at *11 (N.D. Ill. Dec. 18, 2012) ("It is not unreasonable, however, to require a plaintiff to describe [in the complaint] the phone messages he received in laymen's terms or provide the circumstances surrounding them to establish his belief that the messages were pre-recorded or delivered via the ATDS."); *Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165, 1171 (N.D. Cal. Dec. 29, 2010) (". . . it is conclusory to allege that messages were sent 'using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.' Such a naked assertion need not be taken as true."). Due to the lack of any facts relating to the content of the calls plaintiff received, this Court can only speculate as to their purpose. Accordingly, plaintiff's complaint fails under *Twombly* and should be dismissed pursuant to Rule 12(b)(6).

### B. Plaintiff Expressly Consented To Receive Customer Survey Calls

Under Section 227(b)(1)(A)(iii) of the TCPA, a plaintiff must establish that: (1) a call was made; (2) the caller used an automated telephone dialing system or artificial or prerecorded

7

voice; (3) the telephone number called was assigned to a cellular telephone service; and (4) *the caller did not have prior express consent of the recipient*. 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(1); *Thrasher-Lyon v. Ill. Farmers Ins. Co.*, 861 F. Supp. 2d 898, 905 (N.D. Ill. 2012). Thus, if prior express consent is given by a call recipient, a business like Heartland is free to make *non*-telemarketing calls to that recipient without violating the TCPA.

The TCPA and its legislative history are silent on how such prior express consent must be obtained for *non*-telemarketing calls, and does not define "prior express consent." Under the Administrative Orders Review Act (more commonly called the Hobbs Act), however, the FCC's interpretation of "prior express consent" is binding on federal district courts, including this one. *CE Design, Ltd. v. Prism Bus. Media, Inc.*, 606 F.3d 443, 449-50 (7th Cir. 2010).[2] The FCC has expressly ruled in the context of non-telemarketing calls that "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary." *See* 1992 Order, 27 FCC Rcd at ¶ 31. For example, the FCC has held that a consumer who provides his or her wireless telephone number on a credit application, absent instructions to the contrary, has given "prior express consent" to receive autodialed or prerecorded message calls at that number. *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd 559, 566 (Jan. 4, 2008) at *564-65, ¶¶ 9-10.

District courts here and around the country have consistently held that providing one's cellular phone number to a business during a business transaction constitutes "express consent"

---

[2] The FCC has recently issued regulations providing guidance on what constitutes prior express *written* consent only for a "telephone call that includes or introduces an advertisement or constitutes telemarketing." 47 C.F.R. § 64.1200(a)(2). Here, the calls at issue were made for the sole purpose of conducting customer satisfaction surveys. (Walker Declaration at ¶ 20.) At no point during the survey are call recipients encouraged to purchase products or services from, or otherwise invest in, Heartland or Jiffy Lube. (*Id*. at ¶ 19.) This regulation is therefore inapplicable.

8

to receive automated calls from that business, absent instructions to the contrary. *See, e.g., Greene v. DirectTV, Inc. et al.*, 2010 U.S. Dist. LEXIS 118270 at *7-10 (N.D. Ill. Nov. 8, 2010) ("Greene expressly consented to the fraud alert phone call by releasing her cell phone number as the one at which she wished to be reached"); *Pinkard v. Wal-Mart Stores, Inc.*, 2012 U.S. Dist. LEXIS 160938, at *14-6 (N.D. Ala. Nov. 9, 2012) ("providing her cellular telephone number to defendant was 'clear and unmistakable' consent to be contacted at that number. To hold otherwise would contradict the overwhelming weight of social practice: that is, distributing one's telephone number is an invitation to be called, especially when the number is given at another's request"); *Roberts v. PayPal, Inc.*, 2013 U.S. Dist. LEXIS 76319, at *4 (N.D. Cal. May 30, 2013) (holding that plaintiff's provision of cell phone number to defendant constituted express consent to receive information about defendant's mobile services); *Saunders v. NCO Fin. Sys., Inc.*, 910 F. Supp. 2d 464, 467 (E.D.N.Y. Dec. 19, 2012) ("authorities are almost unanimous that voluntarily furnishing a cellphone number to a vendor or other contractual counterparty constitutes express consent").[3]

Here, plaintiff knowingly provided his telephone number to Heartland, as evidenced by the face of the invoice. (Walker Declaration at Ex. 2.) Plaintiff's allegation that Heartland "made these unsolicited marketing calls to Litchfield's cellular phone number using a system which either makes calls by randomly or sequentially generating the number to which a call will be made" is simply incorrect. (Compl. ¶¶ 12, 13.) Plaintiff's provision of his phone number in

---

[3] Recently, a court in this district clarified its interpretation of FCC guidance regarding what constitutes "prior express consent" under the TCPA. *See Kolinek v. Walgreen Co.*, 2014 U.S. Dist. LEXIS 91554 (N.D. Ill. July 7, 2014). In that case, the plaintiff acknowledged providing Walgreens with his cell phone number, but alleged that the pharmacist told him it was needed for verification purposes only (*i.e.*, to differentiate him from any other person with the same name) and that he would not be contacted otherwise. *Id.* at *10. Given the implied instruction to not contact him for any reason other than to verify his identity, the court held that "consent for one purpose does not equate to consent for all purposes." *Id.* Here, no such limiting instruction is (or could be) alleged, thus, *Kolinek* is inapplicable.

connection with his oil change constituted "prior express consent" to be called about the quality of that service as a matter of law. Accordingly, he cannot sustain a claim under the TCPA and his complaint should be dismissed with prejudice.[4]

### C. This Court Should Compel Arbitration And Stay These Proceedings

Even if plaintiff could state a colorable claim, this Court should enforce the parties' contract and stay these proceedings pending the outcome of binding arbitration. Plaintiff has agreed that any dispute between the parties relating to the services rendered or communications between Heartland and plaintiff "**shall be settled by final and binding arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules**…." (Walker Declaration at Ex. 2.) (emphasis in original).

The Federal Arbitration Act ("FAA") establishes a strong policy of favoring arbitration of disputes that requires courts to "rigorously enforce agreements to arbitrate." *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987). When parties have an agreement to arbitrate, the party opposing arbitration bears the burden of proving that the claims at issue should not be subjected to arbitration. *Green Tree Financial Corp. v. Randolph*, 531 U.S. 79, 91-92 (2000). "The standard for demonstrating arbitrability is not a high one; in fact, a district court has little discretion to deny an arbitration motion, since the [FAA] is phrased in mandatory terms." *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 475 (9th Cir. 1991). In undertaking this analysis, a court must determine "(1) whether a valid agreement to arbitrate exists and (2) whether the scope of the parties' dispute falls within that agreement." *Tickanen v.*

---

[4] If the Court determines that it may not consider the invoice for purposes of this motion to dismiss pursuant to Rule 12(b)(6), defendant respectfully requests that this Court convert this motion to dismiss to a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, and limit any requested discovery to that which will establish the nature and purpose of the telephone calls at issue. *See e.g., Sterk v. Path, Inc.*, 2013 U.S. Dist. LEXIS 140017 (N.D. Ill. Sept. 26, 2013) (ordering limited discovery and an opportunity to file dispositive motions on the question of whether defendant's equipment qualified as an automatic telephone dialing system under the TCPA).

*Harris & Harris, Ltd.*, 461 F. Supp. 2d 863, 866 (E.D. Wis. 2006). The agreement at issue here plainly satisfies both tests.

### 1. Plaintiff's Arbitration Agreement With Heartland Is Valid

Federal courts apply "ordinary state-law principles that govern the formation of contracts to decide whether the parties agreed to arbitrate a certain matter." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 662 (7th Cir. 2002). Under Illinois law, courts consider "whether each party had a reasonable opportunity to understand the terms of the contract, and whether important terms were hidden in a maze of fine print; both the conspicuousness of the clause and the negotiations relating to it are important." *Kinkel v. Cingular Wireless, LLC*, 223 Ill. 2d 1, 48 (Ill. 2006).

Following these principles, this Court should conclude that the parties' arbitration agreement is enforceable for several reasons. ***First***, the arbitration agreement is written in bold font on the second page of a two-page contract that set forth the entirety of the terms governing the parties' relationship – including an express warranty on Heartland's services and parts. (Walker Declaration at Ex. 2.) Courts in this district have upheld similar arbitration clauses contained in consumer contracts. *See, e.g., O'Quinn v. Comcast Corp.*, 2010 U.S. Dist. LEXIS 125879, at *12 (N.D. Ill. Nov. 29, 2010) (enforcing arbitration agreement that was printed on page 21 of a 39-page document); *Valentine v. WideOpen West Fin., LLC*, 2012 U.S. Dist. LEXIS 40396, at *11-12 (N.D. Ill. Mar. 26, 2012) (enforcing arbitration provision printed on page 26 of a 30-page document). Plaintiff cannot claim that he was unaware of the arbitration agreement, because he signed his name directly under text that read "[g]uest agrees to the Terms & Conditions on the back of this invoice." (Walker Declaration at Ex. 2.)

***Second***, the arbitration agreement is unquestionably conspicuous because it is in bold font of the same size as the rest of the Terms & Conditions. *See e.g., In re RealNetworks, Inc.*

11

*Privacy Litig.*, 2000 U.S. Dist. LEXIS 6584 at *15 (N.D. Ill. May 11, 2000) (holding that license agreement was not unconscionable when the arbitration agreement was in the same size font as the rest of the agreement); *Cicle v. Chase Bank USA*, 583 F.3d 549, 554 (8th Cir. 2009) (holding that arbitration agreement in fine print was not unconscionable when provision was in the same size font as the rest of the agreement, and introduced by a boldface heading).

***Third***, plaintiff had a reasonable amount of time (*i.e.*, thirty days) to understand the terms of the agreement *and* had the option to unilaterally reject it within that period. *Williams v. TCF Nat'l Bank*, 2013 U.S. Dist. LEXIS 28074 at *21 (N.D. Ill. Feb. 26, 2013) (finding that plaintiff had a reasonable opportunity to understand the terms of the contract where arbitration agreement allowed customers to reject the agreement within 30 days); *O'Quinn v. Comcast Corp.,* 2010 U.S. Dist. LEXIS 125879, at *12 (enforcing arbitration agreement that contained a 30 day opt-out provision); *Jones-Mixon v. Bloomingdale's, Inc.*, 2014 U.S. Dist. LEXIS 81073 at *13 (N.D. Cal. June 11, 2014) (holding that thirty days is a reasonable amount of time to decide whether to opt out of an arbitration clause).

The parties' class action waiver is also enforceable. *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1744 (2011) (holding that class-action waivers in consumer contracts of adhesion are enforceable); *Powell v. The Payday Loan Store of Illinois, Inc.*, 2010 U.S. Dist. LEXIS 104002 (N.D. Ill. Sept. 28, 2010) (finding class action waiver in consumer adhesion contract enforceable). Like the arbitration agreement, the class action waiver was conspicuously drafted in bold and capitalized font and located on the second page of the two-page contract. (Walker Declaration at Ex. 2.) Like the arbitration agreement, plaintiff was given thirty days to reject the class action waiver. (*Id*.) The Illinois Supreme Court has specifically held that "a

class-action waiver will not be found unconscionable if the plaintiff had a meaningful opportunity to reject the contract term . . . ." *Kinkel*, 223 Ill. 2d. at 271-274.

Heartland anticipates that plaintiff will argue that the class action waiver provision is unconscionable because the cost of arbitrating will exceed the maximum damages plaintiff claims. But the U.S. Supreme Court has specifically held that a class action waiver is **not** unconscionable if the costs to pursue an individual claim exceed the plaintiff's individual damages. *See Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304 (2013); *AT&T Mobility*, 131 S. Ct. at 1753; *see also Lewis v. Advance Am., Cash Advance Ctrs. of Ill., Inc.*, 2014 U.S. Dist. LEXIS 917 at *9 (S.D. Ill. Jan. 6, 2014). In sum, both the arbitration agreement and the class action waiver are valid and enforceable.

### 2. Plaintiff's Claim Falls Within The Scope Of The Arbitration Clause

Plaintiff's TCPA claim also falls squarely within the parties' arbitration agreement. The Seventh Circuit has repeatedly construed the phrase "arising out of" in arbitration agreements very broadly to cover all disputes arising out of the contract even if the dispute does not directly relate to interpretation or performance of the agreement. *See Gore v. Alltel Communications, LLC*, 666 F.3d 1027, 1033 (7th Cir. 2012) ("we read both 'arising out of' and 'relating to' broadly"); *Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd.*, 1 F.3d 639, 642 (7th Cir. 1993) (noting that "arising out of" covers all disputes "having their origin or genesis in the contract, whether or not they implicate interpretation or performance of the contract *per se*"). The Seventh Circuit has also emphasized that the use of such broad language raises a presumption of arbitration, requiring that any doubts regarding whether the dispute is arbitral be resolved in favor of arbitration. *Gore*, 666 F.3d at 1032; *See also Tuttle v. Sallie Mae, Inc.*, 2014 U.S. Dist. LEXIS 16593, at *13 (N.D. Ind. Feb. 11, 2014) ("… any doubts concerning the scope of the arbitration clause is resolved in favor of arbitration as a matter of federal law").

13

The parties' arbitration agreement here uses the phrase "arising out of," and further provides specific examples of claims that fall within its scope, including claims arising out of "**any communication or advertisement [made] by Heartland or Jiffy Lube" and any "claim under statute, regulation or other rule**." (Walker Declaration at Ex. 2.) (emphasis in original). It is beyond any reasonable argument that the allegations of plaintiff's complaint specifically relate to a "communication" made by Heartland *and* plead a statutory claim. Moreover, this dispute "arises" from the parties' agreement because Heartland would not have called plaintiff unless he had received the service which the invoice memorializes and the Terms & Conditions govern. Thus, based on the plain language of the arbitration agreement, and the presumption that disputes are to be arbitrated, this Court should compel plaintiff to arbitrate his claim.

Indeed, in enforcing less-detailed arbitration agreements, courts across the country have routinely sent TCPA claims to arbitration. *See, e.g., Tuttle*, 2014 U.S. Dist. LEXIS 16593, at *14 (referring TCPA claims to arbitration where contract at issue contained "arising out of" language); *Gonzalez v. Citigroup, Inc.,* 2011 U.S. Dist. LEXIS 135421, at *6-7 (E.D. Cal. Nov. 22, 2011) (referring TCPA claims to arbitration when the arbitration clause applied to "any claim, dispute, or controversy" between the parties); *Bailey v. Household Fin. Corp.,* 2011 U.S. Dist. LEXIS 125208, at *4 (S.D. Cal. Oct. 28, 2011) (granting motion to compel arbitration when the arbitration clause applied to "any claim, dispute, or controversy" between the parties); *Montgomery v. Applied Bank,* 848 F. Supp. 2d 609, 618-19 (S.D. W. Va. Jan. 31, 2012) (granting motion to compel arbitration when the arbitration clause applied to "any dispute" between the parties). The result here should be no different.

Finally, the FAA mandates that this Court issue a stay when an issue in the case is subject to arbitration. 9 U.S.C. § 3. Because plaintiff's only claim is subject to arbitration, the Court should stay the present case pending the outcome of the arbitration proceedings.

## IV. CONCLUSION

Heartland respectfully requests that this Court dismiss plaintiff's complaint with prejudice. Alternatively, Heartland requests that this Court compel plaintiff to arbitrate his claim in the American Arbitration Association, and enter an order staying these proceedings pending the outcome of the arbitration.

DATED: October 21, 2014

                                          HEARTLAND AUTOMOTIVE SERVICES II, INC.

                                          By: */s/ Michael A. Duffy*
                                                One of its Attorneys

FIRM I.D. #28
Michael A. Duffy
michael.duffy@bakermckenzie.com
Michael C. McCutcheon
michael.mccutcheon@bakermckenzie.com
**BAKER & MCKENZIE LLP**
300 East Randolph Street, Suite 5000
Chicago, Illinois 60601
Ph: (312) 861-8000
Fax: (312) 698-2681

3400845-v8\